UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

GENE A. YOUNGBLOOD, an individual,

    Plaintiff,

v.                                            Case No. 3:16-cv-998-J-39JRK

UNITED STATES DEPARTMENT OF
VETERANS AFFAIRS, ROBERT
MCDONALD, Secretary of the U.S.
Department of Veterans Affairs, in his
official and individual capacities, and
ALPHAEUS RICHBURG, Director of the
Jacksonville National Cemetery, in his
official and individual capacities,

    Defendants.
_____/

## ORDER

**THIS CAUSE** is before the Court on Defendants' Dispositive Motion to Dismiss (Doc. 19); the Government's Motion to Substitute (Doc. 21); the Individual Defendants' Dispositive Motion to Dismiss (Doc. 22); Plaintiff's responses in opposition (Docs. 27 and 28); and Defendants' replies (Docs. 31 and 32).

I.    **BACKGROUND**[1]

Plaintiff Dr. Gene A. Youngblood is the lead pastor of First Conservative Baptist Church. Complaint ¶ 20. On invitation of the Veterans News Network ("VNN"), Pastor

---

[1] For purposes of resolving Defendants' Motions, the Court accepts as true the allegations contained in the Complaint and construes those allegations in a light most favorable to Pastor Youngblood. See Rivell v. Private Health Care Sys., Inc., 520 F.3d 1308, 1309 (11th Cir. 2008) ("The allegations in the complaint are taken as true and construed in the light most favorable to the plaintiffs.")

Youngblood gave an invocation prayer at a memorial ceremony held on September 11, 2015 (the "ceremony"). Id. ¶¶ 21-23. The prayer included the following statement:

> We have allowed leaders in Washington today Father, as the former secretary of State, Hilary Clinton to lie to the American people over the loss of our lives in Benghazi. She's turned her back on her duties as an officer in our United States government. She helped cover up the murders of our great soldiers. She has intentionally deceived all of us as Americans. God today we have leaders that are inept, that are further eroding our liberties and our freedoms that you have afforded us as a great nation.

Id. ¶ 23.

Following the memorial ceremony, Defendant Alpheaus Richburg "confronted VNN event organizers to complain that Pastor Youngblood's prayer violated the Code[,]" because the prayer expressed opposition to a "current policy of the Government of the United States."[2] Id. ¶¶ 25 and 37. On November 13, 2015, Mr. Richburg reaffirmed his commitment to enforcement of the Code when he declared that "[v]iews offered during a general memorial service must be in keeping with VA's statutory responsibility of ensuring national cemeteries are maintained as national shrines and, as such, free of partisan or political rhetoric. 38 U.S.C. § 2403(c); 38 CFR. § 1[.]218(a)(14)." Id. 28.[3] [4]

---

[2] The Code appears to refer to 38 U.S.C. § 2403(c) and 38 CFR. § 1.218(a)(14).

[3] Title 38, Section 2403 reads as follows:
> All national and other veterans' cemeteries under the control of the National Cemetery Administration shall be considered national shrines as a tribute to our gallant dead and, notwithstanding the provisions of any other law, the Secretary is hereby authorized to permit appropriate officials to fly the flag of the United States of America at such cemeteries twenty-four hours each day.

[4] "All visitors are expected to observe proper standards of decorum and decency while on VA property. Toward this end, any service, ceremony, or demonstration, except

The letter went on to allege that Pastor Youngblood's comments during the memorial ceremony where not consistent with the VA's policy as set forth in the Federal statutes and regulations. The letter explained that when a speaker choose not to honor VA policy the VA takes it into account when considering future requests for ceremonies. Id. 29.

Pastor Youngblood now brings this action with his seven-count Complaint (Doc. 1) to ensure that "Defendants are restrained from [ ] prospectively" violating individuals' rights of free speech and free exercise of religion. Id. ¶ 35. He contends that his prayer did not express an opposition to the policies of the United States, id. ¶ 38, and that he "desires" to continue praying on VA property without being censored. Id. ¶ 39. He argues that the Code is being enforced against him in a way that gives Defendants the authority to require prayers to be presented for approval before being offered on the property. Id. ¶ 43. As such, Plaintiff contends that Defendants' enforcement of the Code and "actions . . . under color of state law" deprive Pastor Youngblood of his constitutional and statutory rights because Defendants' review threatens to exclude Pastor Youngblood from being able to pray consistent with his beliefs. Id. ¶¶ 50, 53-54. It is Pastor Youngblood's desire to continue praying on VA property free from improper

---

as authorized by the head of the facility or designee, is prohibited. Jogging, bicycling, sledding and other forms of physical recreation on cemetery grounds is prohibited." 38 C.F.R. § 1.218(a)(14)(i). Among that which is prohibited are "partisan activities, i.e., those involving commentary or actions in support of, or in opposition to, or attempting to influence, any current policy of the Government of the United States, or any private group, association, or enterprise." Id. (a)(14)(ii).

restraint by the Code, as applied by Defendants. Id. ¶ 56. Defendants respond that Plaintiff lacks standing to bring this suit.

## II. ANALYSIS

Pastor Youngblood organized his Complaint into seven counts. See generally Complaint. All seven counts are labeled various iterations of "Defendants' Actions" which violated some portion of the United States Constitution and Florida's Religious Freedom Restoration Act ("FRFRA").[5] Nestled in the specific paragraphs, however, are allegations that appear to attack the Code on its face. See, e.g., Complaint ¶ 133. "A facial challenge, as distinguished from an as-applied challenge, seeks to invalidate a statute or regulation itself." Am. Fed'n of State, Cnty, and Mun. Emp. v. Scott, 717 F.3d 851, 863 (11th Cir. 2013) (citation omitted), cert. denied, 134 S.Ct. 1877 (2014).

> [W]hen a plaintiff mounts a facial challenge to a statute or regulation, the plaintiff bears the burden of proving that the law could never be applied in a constitutional manner. Put another way, the challenger must establish that no set of circumstances exists under which the Act would be valid.

---

[5] As to Count Five, which is brought pursuant to FRFRA, the Government moved to substitute itself in place of its employees. Motion to Substitute at 3. Plaintiff acknowledged the Motion, but never filed a response in opposition. (See Doc. 26). Section 2679 of Title 28 allows the United States to be substituted in place of defendant employees when the Attorney General certifies "that the defendant employee was acting within the scope of his office of employment at the time of the incident out of which the claim arose[.]" Once the United States is substituted for a party defendant, the plaintiff "bears the burden of altering the status quo by proving that the employee acted outside the scope of employment." Glover v. Donahoe, 626 F. App'x 926, 929 (11th Cir. 2015) (internal quotations omitted). In this case, the Government provided the proper certification and Pastor Youngblood has not objected. Accordingly, the Government is due to be substituted for Defendant Secretary of the U.S. Department of Veterans Affairs and Defendant Alpheaus Richburg.

Id. (internal quotations and citations omitted). The Eleventh Circuit Court of Appeals holds that "[a]s a general matter, courts strongly disfavor facial challenges." Id. at 864.

> Claims of facial invalidity often rest on speculation. As a consequence, they raise the risk of premature interpretation of statutes on the basis of factually barebones records. Facial challenges also run contrary to the fundamental principle of judicial restraint that courts should neither anticipate a question of constitutional law in advance of the necessity of deciding it nor formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied. Finally, facial challenges threaten to short circuit the democratic process by preventing laws embodying the will of the people from being implemented in a manner consistent with the Constitution.

Id. (quoting Wash. State Grange v. Wash. State Republican Party, 552 U.S. 442, 450-51 (2008)).

Where plaintiffs challenge the validity of a statute because they seek to vindicate their own rights, the challenge is "as-applied." DA Mortgage, Inc. v. City of Miami Beach, 486 F.3d 1254, 1262 (11th Cir. 2007). "An as-applied challenge . . . addresses whether a statute is unconstitutional on the facts of a particular case or to a particular party." Harris v. Mexican Specialty Foods, Inc., 564 F.3d 1301, 1308 (11th Cir. 2009) (internal quotations omitted). "Because such a challenge asserts that a statute cannot be constitutionally applied in particular circumstances, it necessarily requires the development of a factual record for the court to consider." Id. (citation omitted). The distinction between a facial challenge and an as-applied challenge "'goes to the breadth of the remedy employed by the Court, not what must be pleaded in a complaint.'" Scott, 717 F.3d at 863 (quoting Citizens United v. Fed. Election Comm'n, 558 U.S. 310, 331 (2010)).

"Standing 'is the threshold question in every federal case, determining the power of the court to entertain the suit.'" CAMP Legal Def. Fund, Inc. v. City of Atlanta, 451 F.3d 1257, 1269 (11th Cir. 2006) (quoting Warth v. Seldin, 422 U.S. 490, 499 (1975)). "To establish Article III standing, an injury must be concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." Clapper v. Amnesty Int'l USA, 133 S. Ct. 1138, 1147 (2013) (internal quotations omitted). "[T]he party invoking federal jurisdiction bears the burden of establishing these elements." Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A., 781 F.3d 1245, 1251 (11th Cir. 2015) (internal quotations and citation omitted); see also Harrell v. The Florida Bar, 608 F.3d 1241, 1253 (11th Cir. 2010) (requiring the plaintiff to demonstrate standing by showing a sufficient injury in his facial challenge to nine provisions of the Florida Bar's advertising rules).

Among its arguments, Defendants contend that Pastor Youngblood fails to adequately plead that he was injured. To plead that one was injured, a plaintiff must plead "an injury in fact, *i.e.,* a concrete and particularized, actual or imminent invasion of a legally protected interest." Lujan v. Defs. of Wildlife, 504 U.S. 555 (1992). "For an injury to be particularized, it must affect the plaintiff in a personal and individual way." Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1548 (2016), as revised (May 24, 2016) (internal quotations omitted). In addition to particularization, a plaintiff must establish that his injury is "concrete." Id. When using the term concrete, the United States Supreme Court has explained that the term can be tangible or intangible but it must be "real, and not abstract . . . ." Id. at 1548-49. Finally, when an injury is threatened, it must also be immediate. Houston v. Marod Supermarkets, Inc., 733 F.3d 1323, 1340 (11th

Cir. 2013) (holding that immediacy "means reasonably fixed and specific in time and not too far off."). The requirements that an injury be immediate, particularized and concrete serve to protect executive discretion and prevents private litigants from testing the abstract legality of government action. Spokeo, Inc., 136 S. Ct. at 1552 (Thomas, JJ. concurring); see also Babbitt v. United Farm Workers Nat. Union, 442 U.S. 289, 298 ("The basic inquiry is whether the conflicting contentions of the parties present a real, substantial controversy between parties having adverse legal interests, a dispute definite and concrete, not hypothetical or abstract.") (internal quotations and alteration omitted).

To make his showing of injury, Pastor Youngblood relies on paragraph 56 of his Complaint, wherein he alleges that he

> desires to continue exercising his constitutional and civil rights on VA property, and has specific and concrete intentions to continue engaging in the exercise of his constitutional and civil rights, including activities prohibited by the Code, as interpreted and enforced by Defendants, but he is fearful of being excluded from VA property because he is exercising his constitutional and civil rights.

Response at 4 (quoting Complaint ¶ 56). This reliance necessarily anticipates that, in light of Pastor Youngblood's factual recitation that he was allowed to finish his prayer at the ceremony without interruption or reprisal, his avenue for standing is rooted in future injury. Indeed, Plaintiff relies heavily on Bloedorn v. Grube, 631 F.3d 1218, 1225 (11th Cir. 2011) (explaining the law's concern with the chilling of free speech and finding that the plaintiff sufficiently established standing where he had been arrested previously for proselytizing and expressed an intent to revisit a specific place to speak within a reasonably fixed and specific period of time) in defending against Defendants' Motion to

Dismiss. The injury in this case is one in which Pastor Youngblood paints as a chilling of free speech because he fearful of being "excluded" from VA property if a proposed speech fails to confirm to the Code.

It is the lack of specificity that dooms Pastor Youngblood's Complaint and distinguishes it from <u>Bloedorn</u>. In short, the Complaint claims injury because Defendants will consider Pastor Youngblood's past noncompliance in determining whether to allow future ceremonies on VA property. While Pastor Youngblood claims the "threat of future exclusion of Plaintiff from VA property is both great and immediate" he fails to plead specific facts as to how that is so. Instead, Pastor Youngblood sets forth general and vague allegations regarding injury akin to those made by the plaintiffs in <u>Elend v. Basham</u>, 471 F.3d 1199, 1202 (11th Cir. 2006).

<u>Elend</u> involved three plaintiffs who were arrested at a political rally held at the University of South Florida Sun Dome. <u>Id.</u> at 1203. Their arrests came after they refused to move to a designated free speech zone further from where they initially held up their placards. <u>Id.</u> The plaintiffs sued those involved with their arrest for violations of their First and Fourteenth Amendment rights. <u>Id.</u> They sought declaratory relief for the allegedly unconstitutional practices of the defendants as well as injunctive relief which would protect the plaintiffs from future "constitutional violations." <u>Id.</u> The district court eventually dismissed the plaintiffs' verified second amended complaint which alleged that the plaintiffs "fully intend to peacefully express their viewpoints in the future in a manner similar to their activities on November 2, 2002 in concert with presidential appearances at the USF Sun Dome and at other locations around the country." <u>Id.</u> at 1204. The district court reasoned that the threat of future injury was too speculative and

therefore the plaintiffs lacked standing and the claims were not ripe.[6] The Eleventh Circuit Court of Appeals upheld the dismissal after finding that the plaintiffs failed to sufficiently allege an imminent and concrete threat of future injury. Id. at 1205.

Similar to the plaintiffs in Elend, Pastor Youngblood has failed to do more than claim that his constitutional rights have somehow been impeded by an abstract threat of future harm. From the face of the Complaint, it is clear that Pastor Youngblood was not prevented from or punished for giving his desired speech at the ceremony. Indeed, Defendants merely claimed that Pastor Youngblood's remarks and purported violation of the Code would be considered when determining whether to allow Pastor Youngblood to speak at future ceremonies. Yet Pastor Youngblood fails to allege that consideration of his past speech has actually prevented him exercising his "constitutional and civil rights"; the specific location where these rights would be exercised; or when such rights might be exercised. See id. at 1207 (noting that the plaintiffs failed to offer specific details as to where, what type of event, number of members in the audience, etc., in establishing the risk of future injury); see also Am. Civil Liberties Union of Florida, Inc. v. Miami-Dade Cty. Sch. Bd., 557 F.3d 1177, 1194 (11th Cir. 2009) (immediacy requires that an anticipated injury occur within a fixed period of time).

Pastor Youngblood's reliance on the Eleventh Circuit Court of Appeal's determination that standing existed in Houston does nothing to sway this Court's

---

[6] The Eleventh Circuit Court of Appeals acknowledged that "in cases involving pre-enforcement review, the standing and ripeness inquiries may tend to converge." Elend, 471 F.3d at 1205.

analysis. See Houston, 733 F.3d 1323. Unlike this case, Houston dealt with a factual, as opposed to a facial, challenge to the sincerity of plaintiff's claim that he would return to the defendant's premises and face future discrimination. Id. at 1326. After consideration of the totality of circumstances, the court found that the plaintiff established standing where he frequently drove by the defendant's premises and that he would visit the store again. Id. at 1340. The court went on to "caution [ ] that determining standing for injunctive relief is often a fact-sensitive inquiry." Id. Unlike the plaintiff in Houston, Pastor Youngblood has not established an injury or a pattern of activity from which the Court could find "a specific intention pegged to a sufficiently fixed period of time[ ]" by which Pastor Youngblood would be injured. Am. Civil Liberties Union of Florida, Inc., 557 F.3d at 1194. Moreover, Pastor Youngblood has failed to indicate which VA property he might visit, under what circumstances that visit would occur, and that anything other than consideration of his prayer would result. Without a properly alleged injury, Pastor Youngblood has no standing, and this case cannot proceed because resolution of this case would impermissibly require the Court "to decide abstract questions of wide public significance even though other governmental institutions may be more competent to address the questions and even though judicial intervention may be unnecessary to protect individual rights." See Warth, 422 U.S. at 500 (internal citation omitted). No single allegation in the Complaint supports this point better than Pastor Youngblood's own admission that it "is uncertain whether he will be allowed to pray in the manner" he chooses on "VA property." Complaint ¶ 53.

Accordingly, after due consideration, it is

**ORDERED:**

1. Defendants' Dispositive Motion to Dismiss (Doc. 19) is **GRANTED**. The Complaint (Doc. 1) is **DISMISSED without prejudice**. The Clerk of the Court shall close the file and terminate any pending motions.

2. The Government's Motion to Substitute (Doc. 21) is **GRANTED**.

3. The Individual Defendants' Dispositive Motion to Dismiss (Doc. 22) is **DENIED as moot**.

**DONE** and **ORDERED** in Jacksonville, Florida this 25th day of September, 2017.

BRIAN J. DAVIS
United States District Judge

mw
Copies furnished to:

Counsel of Record

/p